Kevin O'Brien, Esq.                      :
995 S. High St.
Columbus, OH  43206,                     :

         Plaintiff,          :        Case No.:

v.                                       :        Judge:

Tad A. Herold, Esq.                      :        Magistrate Judge:
Columbiana Co. Port Authority
7860 Lincole Pl.                         :
Lisbon, OH  44432,
                                         :
        and,
                                         :
Hon. D. Chris Cook
Loraine Co. Court of                     :
Common Pleas
225 Court St.                            :
Elyria, OH  44035,
                                         :
        and,
                                         :
Hon. Adolfo A. Tornichio
Greene Co. Juvenile Court                :
2100 Green Way Blvd.
Xenia, OH  45385,                        :

        and,                :

Kent R. Markus, Esq.                     :
Columbus Bar Association
175 S. Third St., Suite 1100             :
Columbus, OH  43215
                                         :
        and,
                                         :
Bryan Griffith, Esq.
Sandborn, Brandon,                       :
Duvall & Bobbitt Co., L.P.A.
2515 W. Granville Rd.                     :
Columbus, OH  43235,
                                         :
        and,
                                         :

```
Russell Jay Kutell, Esq.          :
Frost, Brown, Todd, L.L.C.        :
10 W. Broad St., Suite 2300
Columbus, OH  43215,              :

          Defendants.             :
```

## COMPLAINT

Now comes the Plaintiff, Kevin O'Brien, and, for his Complaint against the Defendants, alleges and avers as follows:

## JURISDICTION

1.  This is a case brought pursuant to the provisions of 42 U.S.C. 1983 for deprivation of rights, privileges and immunities secured by the United States Constitution; Plaintiff seeks injunctive relief, declaratory relief and damages against certain Defendants.

## VENUE

2.  Venue in this case is proper in the United States District Court for the Southern District of Ohio, Eastern Division at Columbus as the acts and events herein complained of occcured entirely in the City of Columbus, Franklin County, Ohio.

## PARTIES

3.  Plaintiff is an attorney admitted to practice law in the State of Ohio, and maintains his professional address at 995 South High St., Columbus, Franklin County, Ohio.

4.  Defendants, Tad A. Herold, Esq., Hon. D. Chris Cook and Hon. Adolfo A. Tornichio, are all members of the Panel in the

Plaintiff's disciplinary action, which is further discussed, below.

5.  Defendants, Kent R. Markus, Esq., Bryan Griffith, Esq., and Russell Jay Kutell, Esq., are all Relators for the Columbus Bar Association in Plaintiff's disciplinary action, which is further discussed, below.

## FACTS

6.  By way of backround, O'Brien is a lawyer admitted to practice in the State of Ohio; O'Brien was admitted to the Ohio Bar in November, 1983; presently, O'Brien is the principal at Kevin O'Brien & Associates Co., L.P.A., located at 995 South High St., Columbus, OH 43206.

7.  In 1991, O'Brien left his employment at Michael Colley's office and started his own practice; in the same year, O'Brien began taking on collection cases beginning with Buckeye Check Cashing, Inc. (hereinafter, "BCCI"), of Dublin, Ohio; as part of the representation, O'Brien agreed to advance, or loan, court costs to BCCI, subject to reimbursement by the client; thereafter, it was O'Brien's policy to advance, or loan, court costs to all clients to facilitate the filing of the client's cases, subject to reimbursement by the client; that during the course of the represenation, BCCI referred approximately 6,800 cases to O'Brien for collection.

8.  That in 1997, O'Brien took on the representation of Columbus Checkcashers, Inc. (hereafter, "CCC"); that, consistent with firm policy, O'Brien advanced, or loaned, court costs to CCC to facilitate the filing of CCC's cases, subject to reimbursement

3

by the client; that during the course of the representation, CCC referred approximately 9,700 cases to O'Brien for collection.

9. That in 2015, O'Brien took on the representation of First National Financial Services, Ltd. (hereinafter, "1st National"); that, consistent with firm policy, O'Brien advanced, or loaned court costs to 1st National to facilitate the filing of 1st National's cases, subject to reimbursement by the client; that during the course of the representation, 1st National referred approximately 207 cases to O'Brien for collection.

10. That from 1991 through the present, O'Brien handled a total of almost seventy thousand collection cases, mostly for payroll advance companies and check cashing companies; consistent with firm policy, O'Brien advanced, or loaned, court costs to all of O'Brien's client's to facilitate the filing of the clients' cases, subject to reimbursement by the client.

11. That in approximately 2016, O'Brien began contemplating retiring from the practice of law; shortly, thereafter, O'Brien began writing to his clients to advise that O'Brien would retire in the coming years and to request that the clients settle their respective cost bills with O'Brien; that most of the clients were cooperative and settled their costs bills with O'Brien; that in some cases, O'Brien was required to, and did, file suit against certain clients to collect outstanding court costs incurred by O'Brien, which sums total several hundred thousand dollars; that O'Brien is legally entitled to be reimbursed for these out-of-pocket case expenses, <u>Fox & Associates Co., L.P.A. v. Purdon</u>

(1989), 44 Ohio St.3d 69.

12. That O'Brien has been unable to persuade Columbus Checkcashers, Inc., Buckeye Check Cashing, Inc., and First National Financial Services, Inc., to pay their respective cost bills.

13. That O'Brien commenced suit in the Franklin County Court of Common Pleas against Columbus Checkcashers, Inc. (nka PLS Financial Solutions of Ohio, Inc.), on June 25, 2018, in Case No.:18 CV 5430, styled <u>Kevin O'Brien & Associates Co., L.P.A. v. PLS Financial Solutions of Ohio, Inc. and PLS Financial Services, Inc.</u>, which is currently pending before the Hon. Judge Stephen McIntosh.

14. That on/about April 3, 2018, and during the time when O'Brien was trying in good faith to negotiate the settlement of his cost bill with Columbus Checkcashers, Inc., Counsel for PLS Financial Services, Inc., Gillian Madsen, Esq., reported O'Brien to the Columbus Bar Association claiming that PLS had discharged O'Brien in 2012, and that O'Brien had filed numerous cases on behalf of Columbus Checkcashers, Inc., all of which were unauthorized, which allegation is patently false and an attempt to avoid paying its costs bill to O'Brien, which bill stands at approximately $112,000.00; that PLS Financial Services, Inc., and its Counsel, Gillian Madsen, Esq., have tortiously interfered with at least two CCC cases where O'Brien had secured judgments against CCC debtors causing O'Brien to be sued for alleged Fair Debt Collection Practices Act violations--<u>Laura B. Morton v. Kevin John O'Brien, et al.</u>, Case No.: 18 CV 445, U.S. District Court, S.D.,

5

Ohio, Eastern Div., Judge Graham and <u>Shovon Woodard v. Kevin John O'Brien, et al.</u>, Case No.: 18 CV 1523, U.S. District Court, S.D., Ohio, Eastern Div., Judge Marbley; that in the <u>Woodard</u> case PLS Financial Services, Inc., and its Counsel, Gillian Madsen, agreed to vacate a ten thousand dollar judgment against Woodard for fraud, which conduct was completely at odds with its own corporate interest; that in the <u>Morton</u> and <u>Woodard</u> cases PLS Fiancial Services, Inc., and its lawyer, Gillian Madsen, conspired with and assisted the Plaintiff's Counsel, Greg Reichenbach, by providing false information to Reichenbach about O'Brien's conduct in order to assist Reichenbach and his clients (debtors or former debtors of CCC) in order to coerce O'Brien to abandon his litigation against the PLS entities, above.

15. That O'Brien commenced suit in the Franklin County Court of Common Pleas against Buckeye Check Cashing, Inc., on February 25, 2019, styled <u>Kevin O'Brien & Associates Co., L.P.A. v. Buckeye Check Cashing, Inc. et al.</u>, which is currently pending before the Hon. Daniel Hawkins.

16. That on/about March 22, 2019, and during the time when O'Brien was attempting in good faith to negotiate the settlement of his cost bill with BCCI, it is Plaintiff's understanding that Counsel for BCCI, d/b/a Community Choice Financial, Bridget Roman, Esq., reported O'Brien to the Columbus Bar Association claiming that BCCI had discharged O'Brien in February, 2013, and that O'Brien had filed numerous cases on behalf of BCCI, all of which were unauthorized, contrary to a letter dated March 15, 2015, from

6

BCCI's own Outsource Manager, Tammy Kullos, who specifcally instructed O'Brien, in writing to continue collection efforts if O'Brien had "...evidence of current and active payment arrangment and/or an active judgement," which was the situation with most of BCCI's case with O'Brien, Exhibit 1; that the allegations made by BCCI and its Counsel, Bridget Roman, were false and patently untrue and were motivated by BCCI's attempt to avoid paying its cost bill to O'Brien, which presently stands at approximately $202,000.00.

17. That, with respect to First National Financial Services, Inc., Plaintiff states that First National presently owes the Plaintiff approximately $10,000.00 in unpaid court costs which were advanced (loaned) by Plaintiff to First National; that Plaintiff has made demand upon First National to pay these unpaid court costs; that, as of this date, Plaintiff continues to represent First National and Plaintiff has not filed suit against First National because the parties have some unfinished business together; however, Plaintiff reserves the right to file suit against First National in the event the parties cannot resolve their differences; that First National's principal, Jim Tucker, has acknowledged, in writing, that it owes the Plaintiff court costs, but has refused to pay because he does not like the contingent fee agreement executed in 2015 by his daughter; that while Plaintiff and First National were negotiating, and continue to negotiate the matter of monies due First National and costs due Plaintiff, First National filed a grievance against the Plaintiff for the purpose of leveraging the Plaintiff and attempting to get the Plaintiff to

7

drop its demand for reimbursement of court costs.

18. That the grievances filed by PLS Financial Solutions of Ohio, Inc., Buckeye Check Cashing, Inc., and First National Financial, Ltd, are all bogus and a fraud, and were filed to obtain a tactical advantage in a lawsuit or prospective lawsuit; specifically, all of the foregoing companies owe the Plaintiff money for unpaid costs advanced by the Plaintiff; that none of the companies ever had any problems with any of the work done by the Plaintiff until the Plaintiff requested reimbursement for its out-of-pocket expenses in anticipation of the Plaintiff's retirement; that the conduct of the foregoing companies is outrageous and beneath contempt; that Plaintiff will not be detered and intends to continue with the litigation or prospective litigation in order to hold these companies accountable; further, that Plaintiff demands a trial in the context of his disciplinary case so that his accusers can be outed for the scoundrels they are.

19. On June 3, 2019, the Board of Professional Conduct of the Supreme Court of Ohio formally charged Plaintiff with multiple disciplinary infractions related to O'Brien's attempts to collect his out-of-pocket expenses from the foregoing clients/former clients and same bears Case No.: 2019-027, before the Board of Professional Conduct.

20. That Defendants, Tad A. Herold, Esq., Hon. D. Chris Cook, Hon. Adolfo A. Tornichio, were all appointed by the Board to be the Panel in O'Brien's case; that Herold, Cook and Tornichio are collectively referred to, herein, as "the Panel".

21. That Defendants, Kent R. Markus, Esq., Bryan Griffith, Esq., and Russell Jay Kutell, Esq., are all Counsel for the Relator, the Columbus Bar Association, and hereby collectively referred to, herein, as "Markus, Griffith and Kutell" or "Relator".

22. That during the pendency of Case No.: 2019-027, and in/around August, 2019, O'Brien began to experience medical issues for which he sought treatment at the Columbus VA Medical Center.

23. That on February 19, 2020, O'Brien was diagnosed by the Columbus VA Medical Center with a serious medical condition and referred to the Ohio State University for further treatment.

24. That on/about February 21, 2020, the Panel set a hearing date in Case No.: 2019-027 for May 4-6, 2020.

25. On April 2, 2020, the Panel conducted a telephone conference with all Counsel; during this telephone conference Plaintiff's Counsel the disciplinary case advised the Panel and Relator, by phone, that Plaintiff was diagnosed with a serious medical condition in February, 2020, was unable to participate in the proceedings and requested a continuance of the proceedings which were scheduled for May 4-6, 2020; during this telephone conference, one of the Panel Members, the Honorable Judge Tornichio, commented that O'Brien would be treated by the Panel with "dignity and respect"; however, following said telephone conference, the Panel Chair, Tad A. Herold, acting on behalf of the entire Panel, put on an Order on April 7, 2020, requiring Plaintiff "...to **file** a written motion for a continuance of the May 4-6, 2020[,] hearing and do so before April 17, 2020. The motion shall

include a signed statement from Respondent's treating physician that includes information regarding (1) the manner in which Respondent's medical condition renders Respondent unable to participate in this proceeding, (2) the impact such condition has on Respondent's ability to practice law, and (3) the anticipated period of time during which Respondent's medical condition will affect both his participation in the proceeding and his ability to practice law," emphasis added, Exhibit 2.

26. That the Panel's Order of April 7, 2020, requires Plaintiff to upload his protected health information to a public website in order to obtain a continuance of the May 4-6, 2020, hearing date.

27. That on April 16, 2020, Plaintiff filed a motion with the Board of Professional Conduct to continue the May 4-6, 2020 hearing dates, Exhibit 3B; that consistent with HIPAA and the Plaintiff's right to privacy under State and federal law, and in an attempt to comply with the Board's April 7, 2020, Order, Plaintiff provided the Panel with a letter from his treating physician which was not uploaded to the Board's website; at the same time, Plaintiff provided the same letter to the Relator with Plaintiff's admonition that "Respondent does not grant permissible use to the Relator or the Panel to publish the contents of Exhibit A or Exhibit A itself in any way for any reason," Exhibit 3A.

28. That on April 17, 2020, Panel Chair, Tad A. Herold, acting on behalf of the entire Panel, issued on Order directing the Relator to file its response to O'Brien's continuance motion on or

before April 23, 2020 and further directing that a ruling on the continuance motion be deferred until after the telephone conference scheduled for April 27, 2020.

29. That on April 21, 2020, Relator, and, in particular, Defendants, Markus, Griffith and Kutell filed their Response to O'Brien's Motion for Continuance; in their Response, which was uploaded to the Board's website, Defendants, Markus, Griffith and Kutell published the Plaintiff's protected health information and made same public, despite the Plaintiff's admonition, above; that said conduct was intentional, purposeful and malicious; that said conduct was done with prior calculation and design and was intended to, and did, harm the Plaintiff as further outlined, below; that the conduct of Markus, Griffith and Kutell was a rank power play designed to punish the Plaintiff and to "teach the Plaintiff a lesson" for not honoring the April 7, 2020, Order of the Panel, not agreeing to surrender his law license, not agreeing to go into inactive status and for having the temerity to defend himself against the charges brought by Relator; that Defendants, Markus, Griffith and Kutell are despicable people who lack any sense of humanity.

30. On April 22, 2020, Plaintiff filed a grievance against Defendants, Markus, Griffith and Kutell with Amy C. Stone, Senior Assistant Disciplinary Counsel for the Ohio Supreme Court, Exhibit 4; to date, there has been no response.

31. On April 28, 2020, Tad A. Herold, acting on behalf of the entire Panel, again issued on Order directing O'Brien "...to

11

provide information that is fully responsive to the panel chair's order of April 7, 2020, including, but not limited to a signed statement from Respondent's treating physician that includes the information requested in that order," Exhibit 5; again, the Panel issued an Order directing O'Brien to disclose and upload his protected health information to the Board's public website as condition of a continuance.

32. That, in an attempt to comply with the Order of the Panel, Kerri Dever, paralegal to Plaintiff's Counsel in the disciplinary action, sent an e-mail to Rick Dove, Esq., director of the Ohio Board of Professional Conduct, to try to schedule a private telephone conference between the Board Chair, Mr. Herold and O'Brien's physician, Exhibit 6; in that e-mail, Ms. Dever noted that O'Brien consented to have Herold share the information obtained from O'Brien's physician with the two other Panel Member and with Marcus, Griffith and Kuttel but noted that "[t]he CBA has already taken Mr. O'Brien's private medical records and uploaded the information to the public docket, violating his right to privacy protected by HIPPA [sic] and his specific instructions not to do so. Mr. O'Brien indicates that if Mr. Harold [sic] does not agree to the terms of use of the medical information then he does not grant permission to make the call," Id.

33. That on May 1, 2020, Richard Dove reponded to the e-mail from Kerri Dever writing: "[Mr. Herold's] willingness to speak with the doctor by telephone was in the context of a discussion about providing written documentation in response to the April 7, 2020,

12

order. Commissioner Herold's expectation is that [O'Brien] will file a written medical determination from his treating physician. If Dr. *** is unwilling to provide the infomation required by the April 7 order in writing, he is willing to speak with her by telephone solely for the purpose of explaining why she refuses to provide the written documentation at the direction of her patient. The telephone converation would not be for the purpose of her explaining orally and in an ex parte fashion the medical rationale for the continuance request," Exhibit 7.

34. That Plaintiff has attempted to comply with the Board's Orders of April 7, 2020, and April 28, 2020, without uploading the Plaintiff's protected health information to the Board's public website.

35. That the April 7, 2020, and April 28, 2020, Orders of the Panel are patently illegal and unlawful in that they require the Plaintiff to upload the Plaintiff's protected health information to the public website of the Board of Professional Conduct for all to see.

36. That Plaintiff acknowledges that the Panel and the Relator have an interest in determining whether Plaintiff is able, from a medical standpoint, to participate in a hearing scheduled by the Panel.

37. That the interests of the Panel and the Relator do not require the Plaintiff to upload his protected health information to the Board's public website and it is only necessary that the Panel and the Relator see the information to satisfy themselves that the

Plaintiff is, in fact, ill and in need of a reasonable continuance.

38. That the interests of all parties on the Plaintiff's motion for continuance of the proceedings can be protected by the Plaintiff's providing a letter from his treating physician which is responsive to the Panel's concerns which is filed under seal or which is considered by the Panel and the Relator in an in camera proceeding and not uploaded to the Board's public website.

39. That the Panel has failed to make and take reasonable precautions to limit the disclosure of the Plaintiff's protected health information to accomplish its intended purpose--to wit, to rule on the Plaintiff's Motion for Continuance.

40. That if Plaintiff had a drug or alcohol problem, which he does not, the Panel would not have ordered him to upload his protected health information.

41. That the Plaintiff is currently immunocompromised due to his medical treatment and it is vital that the Plaintiff not become ill with the covid-19 virus during his treatment; Plaintiff is largely home-bound and does not want to attend a hearing and run the risk of exposure to the virus.

42. That the conduct of the Panel and the Relator in this case should be measured against the backdrop of the covid-19 virus and the lockdown imposed by Governor DeWine; the Panel has already indicated during a telephone conference that it did not want to travel to, and stay in a hotel in Columbus during the pendency of the covid-19 epidemic.

14

**FIRST CAUSE OF ACTION: 42 U.S.C. 1983**

43. Plaintiffs reallege and incorporate paragraphs one (1) through forty-two (42) as if the same were fully rewritten, herein.

44. Further pleading, Plaintiffs state that Defendants are persons who, under color of state law, have subjected Plaintiff, who is a citizen of the United States, to the deprivation of rights, privileges or immunities secured by the United States Constitution and laws of the United States.

45. Specifically, Plaintiff states the April 7, 2020, and April 28, 2020, orders of the Board of Professional Conduct Panel, comprised of Defendants, Herold, Cook and Tornichio (hereinafter, "the Panel"), require the Plaintiff to upload to the Board's public website and publish, for all to see, protected health information as a condition of obtaining a continuance of the proceedings against Plaintiff which orders violate the Plaintiff's constitutionally protected right to privacy that protects an individual from the disclosure of information concerning a person's health, Whalen v. Roe, 429 U.S. 589 (1977); Kallstrom v. City of Columbus, 136 F.3d 1055 (1998) (personnel files of undercover police officers which were released to violent gang which they had infiltrated and testified against protected by consitutional right to privacy; Bloch v. Ribar, 156 F.3d 673 (1998) (right to privacy found in release of highly personal medical information of rape victim by Sheriff in press conference); Moore v. Prevo, 379 Fed.Appx. 425 (2010) (constitutional right to privacy in one's medical information exists, even for prisoner).

15

46. That the release of the Plaintiff's protected health information to the public was never necessary for purposes of the Plaintiff's continuance motion and the Panel should have taken reasonable steps to limit the disclosure of the Plaintiff's protected health information to the mimimum necessary to accomplish the intended purpose--to wit, the continuance.

47. That due process implies an assurance of confidentiality with respect to certain forms of personal infomration possessed by the state.

48. That the United States Supreme Court's decision in <u>Whalen</u> and the penumbra of a variety of provisions in the Bill of Rights protects two kinds of privacy interests: the individual's interest in avoiding disclosure of personal matters and the interest in being independent when making certain kinds of personal decisions.

49. That the law regarding the disclosure of the Plaintiff's protected medical information was clearly established at the time the Board filed the two Orders, referenced above.

50. That the contours of the right were sufficiently clear such that reasonable officials in the position of the Panel would understand that that they were doing violated that right.

51. That the conduct of the Panel in ordering the Plaintiff to upload and disclose, for all to see, to the Boards's public website was objectively unreasonable in light of the Plaintiff's clearly established right to the protection of his private medical information; that the unlawfulness of the Panel's Orders should have been apparent to the Panel.

52. That on April 21, 2020, Relator, and, in particular, Defendants Markus, Griffith and Kutell, uploaded and published to the Board's public website, the Plaintiff's protected health information and made same public, despite the Plaintiff's specific request that they not do so; that said conduct was intentional, purposeful and malicious; that said conduct was done in bad faith, with prior calclulation and design and was intended to, and did, harm the Plaintiff; that said conduct was motivated by ill will and personal anumus; specifically, Plaintiff states that, as a direct and proximate result of the conduct of Markus, Griffith and Kutell, as aforesaid, some or all of the litigants in the collection cases brought by the Plaintiff and set forth, above, and others, have become aware that the Plaintiff is ill and will not discuss/will no longer discuss, resolution of the cases with Plaintiff because they are waiting to see what will become of the Plaintiff; in short, Defendants Markus, Griffith and Kutell have torpedoed the Plaintiff's civil collection cases and Plaintiff has sustained damages; that Relators uploaded the Plaintiff's protected medical information because they are frustrated and have characterized the Plaintiff as being "contentious and difficult" and that the Plaintiff has engaged in "intentionally disruptive improper conduct".

53. That the conduct of Markus, Griffith and Kutell was designed to, and did, punish the Plaintiff for not complying with the Order of the Panel to upload his protected medical information to the Board's public website; that when the Plaintiff called out

17

Markus, Griffith and Kutell for their conduct Plaintiff was advised, in no uncertain terms, that Markus, Griffith and Kutell could do whatever they pleased because they have "absolute immunity" and could not be touched.

54. That the law regarding the disclosure of the Plaintiff's protected health infomration was clearly estabished at the time Defendants, Markus, Griffith and Kutell, disclosed the Plaintiff's protected health informtion.

55. That the contours of the Plaintiff's rights were sufficiently clear such that reasonable officials in the positions of Markus, Griffith and Kutell, would understand that what they were doing violated that right.

56. That the conduct of Markus, Griffith and Kutell was outragous and lacked all common decency.

57. That, in addition to wronfully disclosing the Plaintiff's protected health information, Plaintiff alleges that Defendants, Markus, Griffith and Kutell wrongfully retaliated against the Plaintiff; specifically, Plaintiff states that Plaintiff has demanded a hearing in his disciplinary case to require the Relator to call the deadbeat clients/former clients of the Plaintiff who have grieved against the Plaintiff to testify so that Plaintiff may cross-examine same; that Defendants, Markus, Griffith and Kutell are so frustrated with their inability to move forward in the prosecution of the Plaintiff they they uploaded the Plaintiff's protected health information; that Markus, Griffith and Kutell have demanded that the Plaintiff surrender his law license or, at

minimum, go into inactive status, which Plaintiff has declined to do, and will not do; that Defendants, Marcus, Griffith and Kutell uploaded the Plaintiff's protected health information to the Board's public website in retaliation for the Plaintiff's exercise of his constitutionally protected right to have a hearing in his disciplinary matter and to teach Plaintiff "who is boss".

58. That the Plaintiff's demand to have a full-blown hearing in his disciplinary case was a substantial or motivating factor in the conduct of Markus, Griffith and Kutell in deciding to upload the Plaintiff's protected health information to the Board's public website.

59. That Markus, Griffith and Kutell may have had the right to point out or criticise the fact that the Plaintiff did not comply with the April 7, 2020, and April 28, 2020, Orders of the Panel, even though Plaintiff believes that said Orders were patently illegal, but the right of Markus, Griffith and Kutell did not include the right to reveal the Plaintiff's protected health information.

60. That there was no justification, whatsoever, in the conduct of Defendants Markus, Griffith and Kutell in uploading the Plaintiff's protected health information to the Board's public website.

61. That Defendants, Markus, Griffith and Kutell violated the Plaintiff's rights under Section 1983 in multiple respects, as outlined above.

62. That as a direct and proximate result of the conduct of

19

the Panel, and of Defendants, Markus, Griffith and Kutell, the Paintiff has sustained damage.

63. Further pleading, Plaintiff states that the holding in Younger v. Harris, 401 U.S. 37, 27 L.Ed.2d 669, 91 S.Ct. 746 (1971) does not apply to the Plaintiff's claims set forth in this complaint because the danger of irreparable loss to the Plaintiff is both great and immediate, Plaintiff has challenged the initial Order of the Panel directing the Plaintiff to publically disclose his protected medical information and has been rejected; indeed, the Panel directed the Plaintiff to publically disclose the Plaintiff's protected medical information a second time in its Order of April 28, 2020, and; Defendants, Markus, Griffith and Kutell proceed in consummate bad faith, ill will, personal animus and this Court should not abstain from hearing the Plaintiff's claims.

## SECOND CAUSE OF ACTION: PROCEDURAL DUE PROCESS

64. Plaintiffs reallege and incorporate paragraphs one (1) through sixty-three (63), above, as if fully rewritten, herein.

65. Further pleading, Plaintiff state that Panel's Orders of April 7, 2020, and April 28, 2020, deny the Plaintiff procedural due process in violation of the Plaintiff's rights under the Fourteenth Amendment to the United States Consitution.

66. That as a direct and proximate result of the Panel's Orders of April 7, 2020, and April 28, 2020, the Plaintiff has, or will likely sustain substantial and immediate irreparable harm.

67. That the conduct of Relators, Markus, Griffith and Kutell

in uploading and filing the Plaintiff's protected medical information deny the Plaintiff procedural due process in violation of the Plaintiff's rights under the Fourteenth Amendment to the United States Constitution.

68. That, as a direct and proximate result of the conduct of Markus, Griffith and Kutell, as aforesaid, the Plaintiff has, or will likely stustain substantial and immediate irreparable harm.

**THIRD CAUSE OF ACTION: UNAUTHORIZED/UNPRIVILEGED DISCLOSURE OF NONPUBLIC MEDICAL INFORMATION TO THIRD PARTIES (MARKUS, GRIFFITH & KUTELL, ONLY)**

69. Plaintiff realleges and incorporates paragraphs one (1) through sixty-eight (68), above, as if the same were fully rewritten, herein.

70. further pleading, Plaintiff states that in 1999 the Ohio Supreme Court recognized an independent, common-law tort for the unauthorized, unprivileged disclosure to a third party of nonpublic medical information in <u>Biddle v. Warren General Hospital</u> (1999), 86 Ohio St.3d 395.

71. That in uploading the Plaintiff's protected medical information to the Board's public website, Defendants, Markus, Griffith and Kutell have engaged in the unauthorized, unprivileged disclosure of the Plaintiff's nonpublic medical information to the public, at large.

72. That the conduct of the Defendants, Markus, Griffith and Kutell was intentional, purposeful and malicious and not an accident; that said conduct was done with prior calculation and design and was intended to, and did, harm the Plaintiff; that said

21

conduct was motivated by ill will and personal animus.

73. That, as a direct and proximate result of the conduct of Defendants, Markus, Griffith and Kutell, as aforesaid, the Plaintiff has sustained damage.

**WHEREFORE**, Plaintiffs respectfully pray that this Court take the following action:

-With respect to the Panel:

> enjoin the Panel from Ordering that the Plaintiff is required to upload protected medical information to the Board's public website for all to see;

> direct the Panel to redact the Plaintiff's protected medical information which has already been uploaded to the Board's website by Defendants, Markus, Griffith and Kutell;

> direct the Panel and Messrs. Markus, Griffith and Kutell to consider any protected medical information provided by the Plaintiff to be confidential and not for public consumption;

> direct the Panel to continue the case against the Plaintiff for a reasonable time until the Plaintiff is medically able to assist in his own defense;

> for such other injunctive and declaratory relief as the Court deems just and appropriate.

-With respect to Relator, Defendants Markus, Griffith & Kutell:

> enjoin Defendants, Markus, Griffith and Kutell from uploading to the Board's public website, the protected medical information of the Plaintiff;

> declare that the conduct of Defendants, Markus, Griffith and Kutell, in uploading the Plaintiff's protected medical information to the Board's public website is a violation of the Plaintiff's rights under 42 U.S.C. 1983 and award the Plaintiff compensatory and punitive damages;

> declare that the conduct of Defendants, Markus, Griffith and Kutell in uploading to the Board's public website, constitutes an unconsented, unprivileged discosure to

a third party, to wit--the public at large, and award the Plaintiff compensatory and punitive damages.

for such other injunctive or declaratory relief as the Court deems just and appropriate.

Respectfully submitted,

/s/ Kevin O'Brien

Kevin O'Brien (0028108)
**KEVIN O'BRIEN &
ASSOCIATES CO., L.P.A.**
995 South High St.
Columbus, OH 43206
614/224-3080
614/224-4870 Fax
kevin@ohiolaw1.com