**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | | |
|---|---|---|
| **KEVIN JOHN O'BRIEN,** | : | |
| | : | **Case No. 2:20-cv-02406** |
| **Plaintiff,** | : | |
| | : | **CHIEF JUDGE ALGENON L. MARBLEY** |
| **v.** | : | |
| | : | **Magistrate Judge Deavers** |
| **TAD A. HEROLD, et al.,** | : | |
| | : | |
| | : | |
| **Defendants.** | : | |

## OPINION & ORDER

## I. INTRODUCTION

This matter is before the Court on two motions to dismiss. The first was filed by Defendants D. Chris Cook, Tad A. Herold, and Adolfo A. Tornichio ("Defendants Cook, Herold, and Tornichio" or the "Panel"). (ECF No. 9). The second was filed by Defendants Bryan Griffith, Russell Jay Kutell, and Kent R. Markus ("Defendants Griffith, Kutell, and Markus" or "Relators") (collectively, "Defendants"). (ECF No. 10). For the reasons set forth below, the Court finds that the *Younger* abstention doctrine applies to this case and, as a result, this matter will be **STAYED**. Accordingly, the Court holds both the Panel's Motion to Dismiss [#9] and the Relators' Motion to Dismiss [#10] in abeyance.

## II. BACKGROUND

Plaintiff Kevin O'Brien is an attorney admitted to practice law in the State of Ohio and the principal at Kevin O'Brien & Associates Co., L.P.A. in Columbus, Ohio. (Compl., ECF No. 1 at ¶¶ 3, 6). Since 1991, Mr. O'Brien has managed collection cases on behalf of various clients, including payroll advance companies and check cashing companies. (*Id.* at ¶¶ 7−10). Mr. O'Brien

1

regularly advanced court costs to his clients to facilitate the filing of collection cases, subject to a reimbursement agreement with the client. (*Id.* at ¶ 10). By 2016, Mr. O'Brien was contemplating retirement and sought to settle his outstanding court cost bills with clients who he alleges owe him money. (*Id.* at ¶ 11). He reports that some of his clients paid willingly and that he filed suits against those clients with whom he could not reach a payment agreement. (*Id.*).

On April 3, 2018, a disciplinary proceeding was initiated against Mr. O'Brien before the Ohio Board of Professional Conduct (the "Board"), after five of Mr. O'Brien's former clients filed grievances against him, alleging that he purported to represent them in collection matters after his engagement with them had been terminated. (Compl., ECF No. 1 at ¶¶ 14, 16−17). In accordance with Ohio rules governing lawyer discipline, the certified grievance committee of the Columbus Bar Association ("CBA") undertook a confidential investigation, which led to the filing of a formal complaint against Mr. O'Brien for multiple violations of the Ohio Code of Professional Conduct. (ECF No. 10 at 2; ECF No. 1 at ¶ 18). The Ohio Supreme Court appointed three disinterested lawyers to act as the Panel for the disciplinary hearing against Mr. O'Brien: Defendants Herold, Cook, and Tornichio. (Compl., ECF No. 1 at ¶ 20). Three members of the certified grievance committee of the CBA—Defendants Griffith, Kutell, and Marcus—authored the formal complaint and were responsible for presenting evidence against Mr. O'Brien. (*Id.* at ¶ 21). Mr. O'Brien answered the complaint by denying the allegations against him through his counsel, Jeffrey A. Catri.

Mr. O'Brien reports that he began experiencing medical issues in August 2019, during the discovery phase of the disciplinary proceeding. (*Id.* at ¶ 22). As a result, he filed a *pro se* Motion for Medical Continuance for his final hearing, which was scheduled for February 5−6, 2020 on

February 3, 2020. (ECF No. 10-4). Mr. O'Brien attached a "Work Excuse Form," which  was signed by physician Scott McKeon, and described the following:

> "Mr. O'Brien was seen in the urgent care today for an unspecified medical condition which included symptoms of pain and bleeding. Until he is more fully evaluated by a specialist next week, and/or his symptoms are brought under better control, he will be unable to participate in proceedings involving prolonger sitting or standing, or settings not conducive to frequent bathroom breaks."

On February 21, 2020, the Panel granted Mr. O'Brien's motion and set a new hearing date for May 4−6, 2020. (*Id.* at ¶ 24). The Panel then conducted a telephone conference with the parties on April 2, 2020. (*Id.* at ¶ 25). During this call, Mr. O'Brien's counsel shared that Mr. O'Brien would not be able to participate in the proceedings and requested an additional continuance. (*Id.*). The Panel responded to this request by issuing on Order, requiring Mr. O'Brien to:

> [F]ile a written motion for a continuance of the May 4−6, 2020 hearing and do so before April 17, 2020. The motion shall include a signed statement from Respondent's treating physician that includes information regarding (1) the manner in which Respondent's medical condition renders Respondent unable to participate in this proceeding, (2) the impact such condition has on Respondent's ability to practice law, and (3) the anticipated period of time during which Respondent's medical condition will affect both his participation in the proceeding and his ability to practice law.

(Pl. Ex. 2, ECF No. 1-2).

Mr. O'Brien filed his Motion for Continuance on April 16, 2020 but did not include the physician's letter in the filing. (ECF No. 1 at ¶ 27). Instead, he emailed the physician's letter to the Panel and advised them that he did not grant permission for them to publish the contents of the letter.[1] (Pl. Ex. 3-B, ECF No. 1-4). In their response to the motion, Relators allegedly included

---

[1] Mr. O'Brien has not provided the letter or described its contents, but Defendants allege that the letter "provided no information on the disabling nature of O'Brien's medical issue, why he couldn't participate in the final hearing, how long his infirmity would last or whether he was temporarily disabled from his law practice." (ECF No. 10 at 4).

some of the information from the physician's letter, which was published on the Board's public filing system, and Mr. O'Brien filed a grievance against the Relators with the Ohio Supreme Court. (*Id.* at ¶¶ 29−30). Meanwhile, the Panel issued a second Order directing Mr. O'Brien to include a responsive physician's letter with his motion, which Mr. O'Brien did not do. (*Id.* at ¶¶ 31−34).

Mr. O'Brien filed a Complaint before this Court on May 13, 2020, alleging that the Panel and the Relators violated 42 U.S.C. § 1983 and his procedural due process rights, in addition to committing unauthorized disclosure of nonpublic medical information. Mr. O'Brien seeks declaratory and injunctive relief with respect to the Panel and Relators, and he asks the Court to award compensatory and punitive damages to him for actions taken by the Relators. (ECF No. 1). For the sake of completeness, the Court reproduces Mr. O'Brien's prayer for relief below:

-With respect to the Panel:

enjoin the Panel from Ordering that the Plaintiff is required to upload protected medical information to the Board's public website for all to see;

direct the Panel to redact the Plaintiff's protected medical information which has already been uploaded to the Board's website by Defendants, Markus, Griffith and Kutell[2];

direct the Panel and Messrs. Markus, Griffith and Kutell to consider any protected medical information provided by the Plaintiff to be confidential and not for public consumption;

direct the Panel to continue the case against the Plaintiff for a reasonable time until the Plaintiff is medically able to assist in his own defense;

for such other injunctive and declaratory relief as the Court deems just and appropriate.

-With respect to Relator, Defendants Markus, Griffith & Kutell:

---

[2] Mr. O'Brien lists individual Defendants Markus, Griffith, and Kutell under his request for relief from the Panel. Defendants Markus, Griffith, and Kutell are not Panel members; instead, they comprise the Relators. The Court therefore assumes Mr. O'Brien intends to refer to Defendants Cook, Herold, and Tornichio.

enjoin Defendants, Markus, Griffith and Kutell from uploading to the Board's public website, the protected medical information of the Plaintiff;

declare that the conduct of Defendants, Markus, Griffith and Kutell, in uploading the Plaintiff's protected medical information to the Board's public website is a violation of the Plaintiff's rights under 42 U.S.C. 1983 and award the Plaintiff compensatory and punitive damages;

declare that the conduct of Defendants, Markus, Griffith and Kutell, in uploading to the Board's public website, constitutes an unconsented, unprivileged disclosure to a third party, to wit—the public at large, and award the Plaintiff compensatory and punitive damages.

for such other injunctive or declaratory relief as the Court deems just and appropriate.

In July 2020, Defendants moved to dismiss Mr. O'Brien's claims: the Panel filed its Motion to Dismiss on July 8th (ECF No. 9), and the Relators filed theirs on July 10th (ECF No. 10). Both the Panel and the Relators assert this suit should be dismissed under the *Younger* abstention doctrine because the disciplinary proceedings are still pending before the Board. Additionally, the Relators claim they are entitled both to absolute immunity from liability as agents of the Ohio Supreme Court and to prosecutorial immunity in carrying out their prosecutorial duties on behalf of the Columbus Bar Association. Mr. O'Brien filed responses to the two motions to dismiss on August 31, 2020 and September 4, 2020. (ECF Nos. 16, 19). On September 11 and 17, 2020, Defendants replied in turn. (ECF Nos. 20, 21). This matter is now ripe for disposition.

### III. STANDARD OF REVIEW

In considering the efficacy of a complaint in the context of a motion to dismiss, modern federal pleading standards require the complaint to contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). A complaint will survive a motion to dismiss if the plaintiff alleges facts that "state a claim to relief that is plausible on its face" and that, if accepted as true, are sufficient to "raise a right to relief above the speculative

level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 570 (2007); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A complaint must therefore "contain either direct or inferential allegations respecting all material elements to sustain a recovery under some viable theory." *Edison v. Tenn. Dep't of Children's Servs.*, 510 F.3d 631, 634 (6th Cir. 2007).

In assessing the sufficiency and plausibility of a claim, courts "construe the complaint in the light most favorable to the plaintiff, accept its allegations as true, and draw all reasonable inferences in favor of the plaintiff." *Directv, Inc. v. Treesh*, 487 F.3d 471, 476 (6th Cir. 2007). Thus, dismissal is appropriate only if "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Guzman v. U.S. Dep't of Homeland Sec.*, 679 F.3d 425, 429 (6th Cir. 2012) (quotation omitted).

## IV. LAW & ANALYSIS

Abstention is a judicially created doctrine that precludes federal courts from deciding some matters before them, even though other jurisdictional and justiciability requirements are met. Abstention doctrines exist "to promote harmony between the state and federal courts" and to reflect the "belief that the state courts should be left to decide matters of unique importance to them." *Summit Cty. Crisis Pregnancy Ctr., Inc. v. Fisher*, 830 F. Supp. 1029, 1032 (N.D. Ohio 1993).

Nearly fifty years ago, *Younger v. Harris* held that federal courts may not enjoin pending state court criminal proceedings if doing so would interfere with an ongoing state criminal prosecution or detract from "proper respect for state functions." 401 U.S. 37, 44 (1971). In keeping with these underlying principles, the Supreme Court has since extended the *Younger* abstention doctrine to include certain state civil and administrative proceedings, including attorney disciplinary proceedings. *Middlesex Ethics Comm. v. Garden State Bar Ass'n*, 457 U.S. 423 (1982); *see also Squire v. Coughlan*, 469 F.3d 551, 555−56 (6th Cir. 2006). Specifically, the Sixth

6

Circuit directs "federal courts [to] refrain from enjoining lawyer disciplinary proceedings initiated by state ethics committees if the proceedings are within the appellate jurisdiction of the appropriate State Supreme Court." *Am. Family Prepaid Legal Corp. v. Columbus Bar Ass'n*, 498 F.3d 328, 335 (6th Cir. 2007) (quoting *Prod. Supply Co. v. Fry Steel Inc.*, 74 F.3d 76, 78 (5th Cir. 1996). Therefore, the federal action at issue here falls within the *Younger* abstention doctrine.

### A. Whether *Younger* Abstention Applies

Under the modern *Younger* abstention doctrine, a federal court must abstain from exercising jurisdiction when: (1) the underlying proceeding constitutes an ongoing judicial proceeding; (2) the proceeding implicates important state interests; and (3) the ongoing proceeding affords the plaintiff an adequate opportunity to raise constitutional claims. *Squire*, 469 F.3d at 555.

This case easily meets the first two elements. The parties agree that the state disciplinary proceeding was pending when the instant action was filed, thus satisfying the first element. The Sixth Circuit's decision in *American Prepaid Legal Corp. v. Columbus Bar Ass'n* resolves the second element. 498 F.3d at 335. There, the court found that attorney disciplinary proceedings, including those that regulate the unauthorized practice of law, implicate "precisely the type of important state interest that *Younger* abstention was intended to cover." *Id.* at 334 ("[T]he policies of comity and federalism counsel that because [the state] has such an important interest in regulating its own bar, a state forum should have the first opportunity to review [the state's] rules of lawyer conduct and procedures for lawyer discipline.") Additionally, Mr. O'Brien does not dispute that Ohio has a sufficiently important interest in the state court case. (ECF No. 16 at 7).

The point of contention in this case is the third element: whether Mr. O'Brien can raise his constitutional claims through the state disciplinary proceedings. Mr. O'Brien claims that he has not had an adequate opportunity to raise constitutional challenges regarding the conduct of the

Panel or the Relators. (*Id.*). In support, he cites that he and his counsel "worked hard to try to provide the Panel and the Relators with the information they needed, but in a confidential manner" but that twice they "were shot down." (*Id.*). Accordingly, he suggests that it would be futile to object the Panel's decision now. (*Id.*). Defendants, on the other, argue that Mr. O'Brien may raise his constitutional claims through the state proceedings because nothing in the rules prevents him from doing so. (ECF No. 9 at 9). Furthermore, if the Panel denies or fails to consider them, he can exercise his right to object to the Panel's report and recommendation before the Ohio Supreme Court. (*Id.*).

The third *Younger* prong does not require that the federal plaintiff actually litigate his federal claims in state proceedings. *Judice v. Vail*, 430 U.S. 327, 337 (1977). Instead, when it is "abundantly clear that [the plaintiff] had an *opportunity* to present [his] federal claims in the state proceedings. . . [n]o more is required to invoke *Younger* abstention." *Id.* (emphasis added). To avoid abstention, then,  plaintiff must demonstrate that state law bars consideration of his constitutional claims. *Fieger*, 74 F.3d at 746 (quoting *Pennzoil Co. v. Texaco, Inc.*, 481 U.S. 1, 14 (1987) ("[T]he burden on this point rests on the federal plaintiff to show 'that state procedural law barred presentation of [his] claims."); *Middlesex*, 457 U.S. at 432 ("Where vital state interests are involved, a federal court should abstain unless state law clearly bars the interposition of the constitutional claims.'") (internal quotations omitted). An absence of specific procedures that affirmatively describe how to raise constitutional claims during the state proceeding is not enough. *Squire*, 469 F.3d at 557. Rather, the plaintiff must show that "members of the hearing panel and the Board . . . would have refused to consider a claim that the rules which they were enforcing violated federal constitutional guarantees." *Fieger v. Thomas*, 74 F. 3d. at 747 (quoting *Middlesex*, 457 U.S. at 435) (internal quotations omitted).

8

Mr. O'Brien has failed to meet his burden under the third prong because he has not shown that he is barred from bringing his constitutional claims in state court. Mr. O'Brien is a respondent in an ongoing state disciplinary proceeding before the Ohio Board of Professional Conduct. He has not cited any state law prohibiting him from bringing his constitutional claims through the disciplinary proceedings or otherwise in Ohio state court. In fact, he has already challenged the Relators' conduct in state court by filing a grievance with the Senior Assistant Disciplinary Counsel for the Ohio Supreme Court. (ECF No. 1 at ¶ 30). Moreover, if the Board were to deny or otherwise fail to consider his constitutional claims, he could object. *See* Gov. Bar R. V(12)(K). This is because the full Board must adopt or modify the hearing Panel's report and recommendation and is subject to review by the Ohio Supreme Court. Gov. Bar R. 17(A). Indeed, Mr. O'Brien acknowledges that these procedural mechanisms are available to him. (ECF No. 16 at 9).

Likewise, Mr. O'Brien has not demonstrated that he attempted to issue a formal, procedurally valid objection to any Panel decision. Specifically, he does not appear to have followed state procedural rules in requesting the Panel to redact his medical information when he attempted to comply with the Panel's April 7, 2020 Order. This Order, which instructed Mr. O'Brien on how to request a continuance, directed him to file a written motion and attach a signed statement from his treating physician addressing how his medical condition rendered him unable to participate in the proceedings. (Pl. Ex. 2, ECF No. 1-2). Mr. O'Brien filed the written motion but submitted the physician letter to the Panel separately, via email. (Pl. Ex. 3-B; ECF No. 1-4). The email stated that "Respondent does not grant permissible use to the Relators or the Panel to publish the contents of [the physician letter] in any [sic] for any reason." (*Id.*). The Supreme Court

Rules for the Government of the Bar of Ohio, however, explicitly describe the steps parties must take to redact a document relevant to a Board proceeding:

> A party to a matter pending before the Board may file a motion requesting that the Board restrict public access to all or a portion of a document filed with the Board. . . . In considering the motion . . . the Board chair shall apply the standards set forth in Sup. R. 45(E). If the Board chair finds that public access to a document should be restricted, the order shall direct the use of the least restrictive means available, including but not limited to redaction of the information rather than limiting access to the entire document."

Gov. Bar R. V, Section 8(C). Mr. O'Brien does not acknowledge this rule in his Complaint or allege he followed this procedure. Because Mr. O'Brien has not availed himself of the prescribed mechanism to restrict public access to the contents of his letter, the Court does not find that his future efforts to redact his medical information, if made properly, would be futile. This Court therefore finds that the ongoing disciplinary proceeding affords Mr. O'Brien an adequate opportunity to raise constitutional claims. Accordingly, the *Younger* doctrine presumptively applies to this matter.

### B. Exceptions to *Younger* Abstention Doctrine

Having determined that the three requirements for *Younger* abstention are met in this case, the Court next must determine whether any of the exceptions to *Younger* applies. The Supreme Court recognizes exceptions to the *Younger* abstention doctrine under three circumstances: "(1) where the state proceeding is motivated by a desire to harass or is conducted in bad faith; (2) where [a] challenged statute is flagrantly and patently violative of express constitutional prohibitions; and (3) where there is an extraordinarily pressing need for immediate federal equitable relief." *Schwab v. Kent Cty. Parole Dir.*, No. 1:20-CV-669, 2020 WL 5087881, at *3 (W.D. Mich. Aug. 28, 2020) (quoting *Huffman v. Pursue, Ltd.*, 420 U.S. 592, 611 (1975); *Moore v. Sims*, 442 U.S. 415, 424 (1979); and *Kugler v. Helfant*, 421 U.S. 117, 125 (1975) (internal quotations and citations omitted). "The exceptions to *Younger* have generally been interpreted narrowly by the Supreme

10

Court and the Sixth Circuit." *Kalniz v. Ohio St. Dental Bd.*, 699 F. Supp. 2d 966, 973 (S.D. Ohio 2010) (citing *Gorenc v. City of Westland*, 72 F. App'x 336, 338−39 (6th Cir. 2003). Mr. O'Brien argues that both the bad faith and extraordinary need exceptions apply here, and the Court addresses each of these arguments below.

The Supreme Court has only applied the "bad faith" exception to one set of circumstances: "where state officials initiate repeated prosecutions to harass an individual or deter his conduct, and where the officials have no intention of following through on these prosecutions." *Ken-N.K., Inc. v. Vernon Twp.*, 18 F. App'x 319, 324−25 n.2 (6th Cir. 2001) (citation omitted). Furthermore, the Sixth Circuit notes that:

> Although the Supreme Court has recognized that bad-faith prosecution of an individual may serve as a proper exception to the *Younger* abstention doctrine . . . we have found no Supreme Court case that has ever authorized federal intervention under this exception. Such cases thus are exceedingly rare, particularly where a plaintiff seeking to defeat an abstention argument has failed to avail himself first of state appellate processes before seeking relief in federal court.

*Tindall v. Wayne Cty. Friend of the Court*, 269 F.3d 533, 539 (6th Cir. 2001). Likewise, "no Sixth Circuit case . . . has ever authorized federal intervention under the bad faith or harassment exception." *Kalniz*, 699 F. Supp. 2d at 973. Courts limit findings of bad faith to extreme facts, such as when Texas city police officers "repeatedly engaged in searches and seizures they knew to be unlawful," or when a county prosecutor office "filed twelve separate actions . . . in order to harass the plaintiffs and drain them of all their financial resources." *Id.* at 973−74 (citing *Nobby Lobby, Inc. v. City of Dallas*, 970 F.2d 82 (5th Cir. 1992); *Video Store, Inc. v. Holcomb*, 729 F. Supp. 579, 580 (S.D. Ohio 1990)). Thus, "the standard for evaluating claims of bad faith and bias is difficult to meet." *Berger v. Cuyahoga Cty. Bar Ass'n*, 775 F. Supp. 1096, 1100 (N.D. Ohio 1991).

Mr. O'Brien asks this Court to find that the bad faith exception to the *Younger* abstention doctrine applies to this case. While Mr. O'Brien has made some allegations of improper

motivations of the Panel and the Relators, none of the allegations, even if assumed to be true, rises to the level of egregious bad faith or harassment required for an exception to *Younger* abstention. The Court thus declines to apply the bad faith exception here.

Similarly, Mr. O'Brien has not shown an "extraordinarily pressing need" for intervention from this Court. For this exception to apply, the plaintiff must describe a situation that creates "a sufficient threat of such great, immediate, and irreparable injury as to warrant . . . immediate federal equitable relief, not merely in the sense of presenting a highly unusual factual situation." *Moore*, 442 U.S. at 433 (quoting *Kugler*, 421 U.S. at 124−25).

Mr. O'Brien alleges that he has been injured by the public disclosure of his medical information, and that no remedy is available to him in the context of the state action. (ECF No. 16 at 9−10). As previously described, the Court notes that there is an existing state procedural law, Gov. Bar R. V, Section 8(C), which could alleviate the harms of which Mr. O'Brien complains. Mr. O'Brien's Complaint, however, does not acknowledge the state procedural rule that governs the filing of sensitive information, nor does it contain allegations that he has availed himself of this existing remedy. Instead, Mr. O'Brien describes that he emailed the sensitive document to the Panel along with an "admonition" that he did not grant permission to publish the contents of the document to the Panel or the Relators. (ECF No. 19 at 10). Given these facts, the Court finds that Mr. O'Brien has not shown his injury is so great, immediate, or irreparable so as to warrant federal court intervention. In sum, the Court finds that none of the *Younger* abstention exceptions apply to the case sub judice.

### C. Abstention Procedure

Since *Younger* abstention is appropriate, the Court finally must determine the proper procedural means of abstaining. The Sixth Circuit has instructed district courts to examine the type

of relief sought by the plaintiff to decide whether to dismiss or stay a case under *Younger* abstention:

> [T]he United States Supreme Court has held that "[u]nder our precedents, federal courts have the power to dismiss or remand cases based on abstention principles *only where the relief being sought is equitable or otherwise discretionary*." . . . . Whether the plaintiffs seek legal versus an equitable remedy controls how the district court disposes of the case after holding that the *Younger* doctrine applies to it. If the plaintiffs seek equitable relief, such as an injunction, then the district court may exercise its discretion and decide whether to dismiss the case, and we would then review its decision for abuse of discretion. But where . . . the plaintiffs seek purely legal relief, in the form of damages, *Quackenbush* prevents the district court from even exercising its discretion and deciding to dismiss the case."

*Nimer v. Litchfield Twp. Bd. of Trs.*, 707 F.3d 699, 702 (6th Cir. 2013) (internal citations omitted).

When a plaintiff seeks both equitable relief and legal relief, many courts in the Sixth Circuit stay the entire case rather than treat each form of requested relief differently. *See, e.g.*, *Jordan v. Union Twp. Bd. of Trustees*, No. 1:18-CV-53, 2019 WL 5576499, at *5 (S.D. Ohio Oct. 29, 2019) (staying case when the plaintiff sought both equitable and legal relief); *Huth v. Hubble*, No. 5:14-cv-1215, 2016 WL 966307, at *10 (N.D. Ohio Mar. 4, 2015) (same); *Schwab v. Kent Cty. Parole Dir.*, No. 1:20-CV-669, 2020 WL 5087881, at *4 (W.D. Mich. Aug. 28, 2020) (same).

Here, Mr. O'Brien seeks both equitable relief, in the form of a declaratory judgment and an injunction, and legal relief, in the form of damages, in this federal action. As a result, the Court **STAYS** the case pending resolution of the state disciplinary proceedings.

## V. CONCLUSION

Because the Court finds *Younger* abstention proper, the Court **STAYS** the current action and **ABSTAINS** from exercising jurisdiction over both the Panel's Motion to Dismiss [#9] and the Relators' Motion to Dismiss [#10] until after the State Proceeding is resolved. The Parties are **DIRECTED** to file a joint status report upon completion of the action before the Ohio Board of Professional Conduct. Additionally, the Parties are **DIRECTED** to file a status report regarding

the process of the ongoing disciplinary proceeding on or before June 30, 2021 (if the disciplinary action is not completed before then) and every six months thereafter throughout the pendency of this stay.

      **IT IS SO ORDERED.**

**ALGENON L. MARBLEY**
**CHIEF UNITED STATES DISTRICT JUDGE**

**DATED: February 3, 2021**

14